OXMAN TULIS KIRKPATRICK WHYATT & GEIGER LLP
Attorneys for E.F. Lorence & Sons, Inc.
120 Bloomingdale Road, Suite 100
White Plains, NY 10605
(914) 422-3900
Kenneth M. Lewis, Esq., Of Counsel

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re
                                                        Chapter 11

EARL LORENCE ENTERPRISES LTD.
f/k/a E.F. LORENCE & SONS, INC.
d/b/a INTER COUNTY ALARM SYSTEMS,    Case No. 13-22977

                                      Debtor.

---------------------------------------------------------x

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING USE OF
CASH COLLATERAL; (II) SCHEDULING A FINAL HEARING; AND
(III) APPROVING THE METHOD OF NOTICE OF SUCH HEARING**

        Earl Lorence Enterprises Ltd., the above-captioned debtor and debtor in possession (the "**Debtor**"), by its attorneys, Oxman Tulis Kirkpatrick Whyatt & Geiger, LLP, respectfully represents:

**PRELIMINARY STATEMENT**

        1.        By this Motion (the "**Motion**"), the Debtor requests the entry of an order (the "**Interim Order**"), pursuant to sections 361, 362 and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), (i) authorizing it to use Cash Collateral (as defined below) of JPMorgan Chase Bank, N.A. ("**JPMC**" or the "**Lender**"); (ii) scheduling a final hearing (the "**Final Hearing**") at which time this Court will granting the relief requested in the Motion on a final basis (the "**Final Order**"), and (iii) approving the method of notice with respect to the Final Hearing. A

copy of the proposed Interim Order is attached hereto as Exhibit "A". Interim relief is necessary to avoid irreparable harm to the Debtor.

2.     The use of cash collateral is required to fund the day-to-day operations of the Debtor, including the payment of wages and the acquisition of the services and supplies that are vital to the continued operation of the Debtor's business.

3.     The statutory predicates for the relief requested herein are sections 105, 361, 362 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001, and Local Rule 4001-2.

## JURISDICTION AND VENUE

4.     This court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

5.     On the date hereof (the "**Petition Date**"), the Debtor commenced in this Court a voluntary case under chapter 11 of the Bankruptcy Code.

6.     The Debtor is continuing to operate its business and manage its property as a debtor in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

7.     The Debtor, established in 1969, is a family owned and operated security, installation, service, and monitoring business.

8.     The Debtor operates out of leased premises located at 200 Route 303, Valley Cottage, NY (the "**Premises**").  The Premises are owned by Cal Realty, LLC, which is owned by Carole Lorence (90%) and Scott Lorence (10%).  The monthly rent under the lease is currently $5,000.00.

9.     As of the petition date, the Debtor has 4 full time employees, none of whom

2

are covered by collective bargaining agreements.

10. A security alarm monitoring business is valued, in large part, based on its recurring monthly revenue ("**RMR**") and fixed assets. RMR is calculated by multiplying the number of eligible customer contracts by certain monthly fees generated by those contracts. The RMR is a good reflection of the health of the business, as well as its market value in the industry.

11. In 2010, S.E.M. Security Systems, Inc. ("**S.E.M.**") and the Debtor entered into an Asset Purchase Agreement, providing for the sale of the Debtor's assets to S.E.M. The purchase price was $1.8 million for all RMR, subject to modest adjustments and normal unearned revenue setoffs. The transaction was expected to return $1.8 million or thereabouts to the Debtor.

12. On February 23, 2011, S.E.M. commenced an action in the New York Supreme Court, Orange County (the "**State Court**"), styled *S.E.M. Security Systems, Inc. v. Earl Lorence Enterprises Ltd. f/k/a E.F. Lorence & Sons, Inc. d/b/a Inter County Alarm Systems, Scott Lorence and Scott Lorence, as the personal representative of the Estate of Earl F. Lorence, deceased*, Index No. 2011-001829 (the "**State Court Action**").

13. In the State Court Action, S.E.M. claims that the Debtor breached the agreement, and is seeking damages and specific performance, while the Debtor claims that any purported anticipatory breach was excused when S.E.M. chose to continue the agreement, rather than to terminate it. Under New York State's Election of Remedies doctrine, a party confronting an anticipatory breach must make an election between standing on the breach and suing for damages or moving forward with the transaction by calling for continued performance.

14. After making its election to continue performance, the Debtor claims that S.E.M. refused to close when it refused to deliver the $1.8 million purchase price to the Debtor. Based upon S.E.M.'s self-serving interpretation of the agreement and its calculation of RMR,

3

S.E.M. insisted that at closing, rather than delivering $1.8 million to the Debtor, the Debtor actually was required to deliver to it $160,808, along with title to all of the Debtor's assets; essentially, turning the transaction on its head. The Debtor has, thus, asserted counterclaims for rescission and reformation and, alternatively, for damages based upon S.E.M.'s breach of the agreement.

15. S.E.M. moved for summary judgment and the Debtor cross-moved for summary judgment. On October 24, 2012, and as reaffirmed upon renewal and reargument on January 9, 2013, the State Court granted S.E.M.'s motion and concluded that the Debtor had seller's remorse and was liable for S.E.M.'s damages. The State Court also denied the Debtor's cross-motion. The State Court directed a trial on damages.

16. The Debtor filed an appeal with the Appellate Division, Second Department, which appeal has been fully perfected under Docket No(s). 2012-11116, 2013-149 and 2013-1992, and is awaiting oral argument and decision. Notwithstanding the outstanding appeal, the State Court has nonetheless scheduled a trial on damages for June 24, 2013.

17. The Debtor simply cannot afford to fund the cost of proceeding to trial on damages, especially given the fact that the Debtor believes it will prevail on its appeal, which would not only moot the trial, but would also require a new trial on the Debtor's damages against S.E.M.

18. The Debtor believes the claims asserted by S.E.M. against the Debtor, and the cross-claims asserted by the Debtor against S.E.M., can be resolved in the context of this case and a chapter 11 plan, and can be done so without disrupting the Debtor's business operations, its 1,700 customers or its employees.

## THE DEBTOR'S PRE-PETITION CREDIT AGREEMENT

19. The Debtor had two separate lines of credit with JPMC; one in the amount of $110,000 and the other in the amount of $50,000. As of the Petition Date, the Debtor is indebted to

4

JPMC in the amount of approximately $72,376 with respect to the first line of credit and $25,246 with respect to the second line of credit (collectively, the "**Pre-Petition Agreement**").

20. The Debtor's obligations under the first line of credit are secured by the Debtor's personal property, including accounts, chattel paper, inventory, equipment, general intangibles and proceeds (the "**Prepetition Collateral**"). Scott A. Lorence, the Debtor's President and Chief Executive Officer, is a guarantor of obligations due under the Pre-Petition Agreement.

21. The Debtor believes that as of the Petition Date, the value of the Prepetition Collateral is far in excess of the amount due JPMC.

22. The Debtor, subject to this Court's approval, would continue to utilize JPMC's cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code) ("**Cash Collateral**") in accordance with the budget annexed as Exhibit "B" (the "**Budget**").

## NEED FOR USE OF CASH COLLATERAL

23. The Debtor's ability to maintain business relationships with vendors, suppliers and customers, to pay payroll and other direct operating expenses and otherwise finance operations, is essential to the continued viability of the Debtor.

24. In the absence of its ability to utilize cash collateral, even for a limited time, the continued operation of the Debtor's business would not be possible, and serious and irreparable harm to the Debtor and its estate would occur. The preservation, maintenance and enhancement of the going concern value of the Debtor is of the utmost significance and importance to a successful reorganization of the Debtor under chapter 11 of the Bankruptcy Code.

## BANKRUPTCY RULE 4001(B)(1)(B) CONCISE STATEMENT
## WITH RESPECT TO USE OF CASH COLLATERAL

25. In accordance with Bankruptcy Rule 4001(b) and this Court's Local Rule 4001-2, below is a concise statement of the relief requested with respect to the Debtor's proposed

5

use of Cash Collateral:

(a) <u>Name of Each Entity with an Interest in Cash Collateral</u>: JPMC.

(b) <u>Purpose of Use of Cash Collateral</u>: The Debtor seeks authority to use Cash Collateral to pay the expenses (including, but not limited to, payroll, insurance, taxes, vendors, customer refunds) identified in the Budget, as the budget may be supplemented from time to time. (**Interim Order, ¶¶ D and 4**).

(c) <u>Amount of Cash Collateral</u>: $71,000 per month (approx.) based on the Budget. (**Local Bankruptcy Rule 4001-2(a)(1)**).

(d) <u>Conditions of use of Cash Collateral</u>: To allow for presently unforeseen or underestimated expenses, the Debtor may use Cash Collateral for the expenses specified in the Budgets in amounts exceeding those specified in the Budgets by no more than ten percent (10%) per line item in any given month. (**Interim Order, ¶ 4**); (**Local Bankruptcy Rule 4001-2(a)(2)**).

(e) <u>Adequate Protection</u>: In order to provide adequate protection to Lender in consideration of the Debtor's use of the Cash Collateral, the Debtor proposes to grant to Lender, to the extent of any post Petition Date diminution in the value of the Prepetition Collateral: (i) pursuant to sections 361(3) and 363(e) of the Bankruptcy Code, a claim having priority over any or all administrative expenses of the kind specified in section 503(b) of the Bankruptcy Code (the "**Cash Collateral Adequate Protection Claim**"); (ii) pursuant to sections 363(e) of the Bankruptcy Code, a security interest in and lien upon any and all of the Debtor's pre-Petition Date assets and property that is not otherwise subject to a lien; (iii) pursuant to sections 363(e) of the Bankruptcy Code, a junior security interest in and lien upon any and all of the Debtor's pre-Petition Date assets and property that is otherwise subject to a lien; and (iv) pursuant to sections 361(2) and 363(e) of the Bankruptcy Code, a security interest in and replacement lien upon any and all of the Debtor's assets and

6

property of any kind and all cash and non-cash proceeds thereof which are or have been acquired, generated, or received by the Debtor after the Petition Date (the "**Cash Collateral Adequate Protection Liens**"). Notwithstanding the foregoing, the Lender shall not be granted a lien upon the Debtor's claims and causes of action under sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "**Avoidance Actions**"), including any proceed therof. (**Interim Order, ¶ 6.**)

(f) The administrative claims, liens and security interests granted to Lender hereunder shall be subordinate and subject to (a) claims for fees and reimbursement of expenses that may be awarded pursuant to sections 330 or 331 of the Bankruptcy Code to professionals retained by the Debtor, and any official committee of unsecured creditors appointed by order of this Court pursuant to sections 327, 328, 363, or 1103(a) of the Bankruptcy Code, subsequently allowed by the Court under sections 330, 331, or 363 of the Bankruptcy Code; (b) unpaid fees or expenses of a chapter 7 trustee; and (c) any claims for payments the Debtor is required to make to the United States Trustee as specified in 28 U.S.C. §1930, and any applicable interest thereon (collectively, the "**Carve-Out**"). (**Interim Order, ¶ 7**.)

(g) The Debtor is authorized, but not directed, to pay to the Lender such amounts as the Debtor deems appropriate in order to reduce any amounts due to Lender in the ordinary course of business, without further order of this Court. (**Interim Order, ¶ 8**.)

26.  The terms and conditions of the Interim Order shall be effective and immediately enforceable upon its entry by the Clerk of the Court.

27.  Pursuant to Bankruptcy Rule 4001(c), the Debtor requests that the court conduct (i) an emergency hearing (the "**Emergency Hearing**") to enter the Emergency Order, authorizing the Debtor to use Cash Collateral pending a final hearing on the Motion (the "**Final**

**Hearing**"); and, on or about 15 days thereafter, (ii) the Final Hearing to enter the Final Order authorizing the Debtor to use Cash Collateral.

28. Such relief is necessary to maintain ongoing operations and avoid immediate and irreparable harm and prejudice to the Debtor's estates and all parties in interest in the Debtor's chapter 11 case.

29. The Debtor's request is also appropriate under section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [the Bankruptcy Code]." 11 U.S.C. § 105(a).

## NOTICE

30. Following entry of the Interim Order, the Debtor proposes to provide notice of entry thereof, of the Motion, and of the Final Hearing by regular first-class mail to (i) the Office of the United States Trustee; (ii) JPMC; and (iii) the 20 largest unsecured creditors of the Debtor.

31. The Debtor respectfully submits that no other or further notice need be provided.

32. No previous application for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests (i) entry of the Interim Order in the form annexed hereto as Exhibit "A" authorizing the Debtor to utilize cash collateral; and (ii) after the Final Hearing, entry of the Final Order; and (iii) such other and further relief as is just.

Dated: White Plains, New York
June 19, 2013

        OXMAN TULIS KIRKPATRICK WHYATT
          & GEIGER LLP
        Attorneys for Earl Lorence Enterprises Ltd.

        By: /s/ Kenneth M. Lewis
            Kenneth M. Lewis, of Counsel

        120 Bloomingdale Road, Suite 100
        White Plains, NY 10605
        (914) 422-3900
        klewis@lewispllc.com